## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DARRYL GRAY, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ALPHA AND OMEGA SEMICONDUCTOR LIMITED, MIKE F. CHANG, and YIFAN LIANG,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Darryl Gray ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Alpha and Omega Semiconductor Limited ("Alpha and Omega" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Alpha and Omega; and (c) review of other publicly available information concerning Alpha and Omega.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Alpha and Omega securities between August 7, 2019 and February 5, 2020, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Alpha and Omega designs, develops, and supplies power semiconductors. It purports to have a portfolio of over 2,100 products that target high volume applications, including personal computers, LED lighting, battery packs, home appliances, and consumer and industrial motor controls.

3.      On February 5, 2020, post-market, Alpha and Omega issued a press release announcing its financial results for the second fiscal quarter of 2020. Therein, the Company disclosed that the U.S. Department of Justice "recently commenced an investigation into the Company's compliance with export control regulations relating to certain business transactions with Huawei and its affiliates ('Huawei')." Moreover, "[i]n connection with this investigation, [the Department of Commerce] has requested the Company to suspend shipments of its products to Huawei." Alpha and Omega stated that "financial performance in the March quarter will be negatively impacted by the Huawei shipment interruption and by additional professional fees incurred in connection with the investigation."

4.      On this news, Alpha and Omega's stock price fell $1.48 per share, or 12%, to close at $10.85 per share on February 6, 2020, on unusually heavy trading volume.

5.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company's export control practices were in violation of applicable laws and regulations; (2) that, as a result, the Company was vulnerable to regulatory scrutiny and liability; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

6.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

10.      In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

11.     Plaintiff Darryl Gray, as set forth in the accompanying certification, incorporated by reference herein, purchased Alpha and Omega securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.     Defendant Alpha and Omega is incorporated under the laws of Bermuda with its principal executive offices located in Hamilton, Bermuda. Alpha and Omega's common stock trades on the NASDAQ exchange under the symbol "AOSL."

13.     Defendant Mike F. Chang ("Chang") was the Company's Chief Executive Officer ("CEO") at all relevant times.

14.     Defendant Yifan Liang ("Liang") was the Company's Chief Financial Officer ("CFO") at all relevant times.

15.     Defendants Chang and Liang (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

16.     Alpha and Omega designs, develops, and supplies power semiconductors. It purports to have a portfolio of over 2,100 products that target high volume applications,

including personal computers, LED lighting, battery packs, home appliances, and consumer and industrial motor controls.

**Materially False and Misleading**
**Statements Issued During the Class Period**

17.     The Class Period begins on August 7, 2019. On that day, the Company announced its fourth quarter and full year 2019 financial results in a press release. Therein, Alpha and Omega reported revenue of $450.9 million and net income of approximately $1.9 million. Moreover, the press release stated, in relevant part:

> "Our solid fourth quarter results marked a strong finish to fiscal year 2019, another record year on top of a very strong 2018. This clearly demonstrates the strength of our business strategy, operating excellence, as well as our diversified product portfolio and growing customer base," stated Dr. Mike Chang, chairman and CEO of the company.
>
> "***Looking ahead, despite the ongoing challenges of current market conditions and the geopolitical environment, we are consistently making progress toward our calendar 2021 annual revenue target of $600 million. The demand for our products, especially for mobile and home appliance applications, remains strong***. The ramp up of Chongqing Joint Venture is well timed, as we are in the process of increasing volume production for multiple global brand OEM customers. We believe the success of our new product initiatives, diversification in product portfolio and customer base, as well as disciplined and timely investment in capacity expansion over the past several years will further propel our long-term growth."

**Business Outlook for Fiscal Q1 Ending September 30, 2019**

*The following statements are based on management's current expectations. These statements are forward-looking, and actual results may differ materially. AOS undertakes no obligation to update these statements.*

- Revenue is expected to be in the range of $115 million to $119 million.

- Gross margin is expected to be approximately 20.0% plus or minus 1%. Non-GAAP gross margin is expected to be approximately 27.3% plus or minus 1%. Non-GAAP gross margin excludes $0.5 million of estimated share-based compensation charge and $8.1 million of estimated production ramp-up costs relating to the Chongqing Joint Venture as the 12" fab initiates production in the September quarter.

- Operating expenses are expected to be in the range of $27.0 million plus or minus $1 million. Non-GAAP operating expenses are expected to be in the range of

$24.6 million plus or minus $1 million. Both GAAP and non-GAAP operating expenses include $2.9 million to $3.1 million of estimated expenses relating to the development of our digital power controller business. Non-GAAP operating expenses exclude $2.4 million of estimated share-based compensation charge.

18.    On August 23, 2019, Alpha and Omega filed its annual report on Form 10-K for the period ended June 30, 2019 (the "2019 10-K"), affirming the previously reported financial results. Moreover, the report stated that:

Our international operations subject our company to risks not faced by companies without international operations.

We have adopted a global business model under which we maintain significant operations and facilities through our subsidiaries located in the U.S., China, Taiwan and Hong Kong. Our main research and development center is located in Silicon Valley, and our manufacturing and supply chain is located in China. We also have sales offices and customers throughout Asia, the U.S. and elsewhere in the world. Our international operations may subject us to the following risks:

- economic and political instability, including trade tension between the U.S. and China;

- costs and delays associated with transportations and communications;

- coordination of operations through multiple jurisdictions and time zones;

- fluctuations in foreign currency exchange rates;

- trade restrictions, changes in laws and regulations relating to, amongst other things, import and export tariffs, taxation, environmental regulations, land use rights and property; and

- the laws of, including tax laws, and the policies of the U.S. toward, countries in which we operate.

19.    On November 4, 2019, Alpha and Omega announced its first quarter 2020 financial results in a press release, reporting revenue of $117.8 million and net income of $6.5 million. Moreover, the press release stated, regarding its outlook for second quarter 2020:

- Revenue is expected to be between $117 million and $121 million.

- GAAP gross margin is expected to be approximately 22.3% plus or minus 1%. Non-GAAP gross margin is expected to be approximately 27.3% plus or minus 1%. Note that non-GAAP gross margin excludes $0.4 million of estimated share-

based compensation and $5.8 million of estimated production ramp-up costs relating to the JV Company.

- GAAP operating expenses is expected to be in the range of $27.4 million plus or minus $1 million. Non-GAAP operating expenses are expected to be in the range of $25.4 million plus or minus $1 million. Both GAAP and non-GAAP operating expenses include $3.1 million to $3.3 million of estimated expenses relating to the development of our digital power controller business. Non-GAAP operating expenses exclude an estimated share-based compensation charge of approximately $2.0 million.

- Tax expense is expected to be approximately $0.5 million to $0.7 million.

- Loss attributable to noncontrolling interest is expected to be around $3.6 million. On a non-GAAP basis, excluding estimated production ramp-up costs relating to the JV Company, this item is expected to be approximately $0.9 million.

20.     On November 12, 2019, Alpha and Omega filed its quarterly report for the period ended September 30, 2019, affirming the previously reported financial results. In addition, the report stated that, except for certain risks associated with proposed tariffs, "there have been no material changes to the risk factors [the Company has] previously disclosed in filings with the SEC."

21.     The above statements identified in ¶¶ 17-20 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that the Company's export control practices were in violation of applicable laws and regulations; (2) that, as a result, the Company was vulnerable to regulatory scrutiny and liability; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

22.     On February 5, 2020, post-market, Alpha and Omega issued a press release announcing its financial results for the second fiscal quarter of 2020. Therein, the Company disclosed that the U.S. Department of Justice "recently commenced an investigation into the Company's compliance with export control regulations relating to certain business transactions

with Huawei and its affiliates ('Huawei')." Specifically, the press release stated, in relevant part:

> The Company notes that Department of Justice recently commenced an investigation into the Company's compliance with export control regulations relating to certain business transactions with Huawei and its affiliates ("Huawei"), which were added to the "Entity List" by the Department of Commerce ("DOC"). The Company is cooperating fully with federal authorities in the investigation. The Company has maintained an export control compliance program and has been committed to comply fully with all applicable laws and regulations. In connection with this investigation, ***DOC has requested the Company to suspend shipments of its products to Huawei, and the Company is currently working with DOC to resolve this issue.*** Accordingly, we expect the financial performance in the March quarter will be negatively impacted by the Huawei shipment interruption and by additional professional fees incurred in connection with the investigation. We note that the DOC order applies to only our shipment to Huawei and sales to other non-Huawei customers are expected to continue, unaffected by the order. Since this is a pending and confidential matter, the Company does not intend to comment further on the status of this investigation except as required by law.

* * *

**Business Outlook for Fiscal Q3 Ending March 31, 2020**

*The following statements are based on management's current expectations. These statements are forward-looking, and actual results may differ materially. AOS undertakes no obligation to update these statements.*

Based on this development and the estimated production loss in China due to the coronavirus outbreak and extended Chinese New Year holiday, our expectations for the third quarter of fiscal year 2020 are as follows:

- Revenue is expected to be between $106 million and $110 million. We estimate that the loss of production due to the coronavirus outbreak and extended Chinese New Year holiday will reduce revenue by $6 million to $7 million for the March quarter, based on the information we have as of today. ***The interruption of shipments to Huawei is expected to reduce revenue for the March quarter by approximately $4 million to $5 million.***

- GAAP gross margin is expected to be approximately 17.3% plus or minus 1%. Non-GAAP gross margin is expected to be approximately 26.0% plus or minus 1%. Note that non-GAAP gross margin excludes $0.4 million of estimated share-based compensation and $8.5 million of estimated production ramp-up costs relating to the JV Company.

- GAAP operating expenses is expected to be in the range of $29.0 million plus or minus $1 million. Non-GAAP operating expenses are expected to be in the range of $25.5 million plus or minus $1 million. Both GAAP and non-GAAP operating expenses include $3.0 million to $3.3 million of estimated expenses relating to the

development of our digital power controller business. Non-GAAP operating expenses *exclude $1.0 million to $2.0 million of estimated professional fee related to the government investigation* and $2.0 million of estimated share-based compensation charge.

(Emphases added.)

23.     On this news, Alpha and Omega's stock price fell $1.48 per share, or 12%, to close at $10.85 per share on February 6, 2020, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Alpha and Omega securities between August 7, 2019 and February 5, 2020, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

25.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Alpha and Omega's common shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Alpha and Omega common stock were traded publicly during the Class Period on the NASDAQ. Record owners and other members of the Class may be identified from records maintained by Alpha and Omega or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

26.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

27.     Plaintiff will fairly and adequately protect the interests of the members of the

Class and has retained counsel competent and experienced in class and securities litigation.

28.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Alpha and Omega; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

29.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

30.     The market for Alpha and Omega's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Alpha and Omega's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Alpha and Omega's securities relying upon the integrity of the market price of the Company's securities and market information relating to Alpha and Omega, and have been damaged thereby.

31.     During the Class Period, Defendants materially misled the investing public,

thereby inflating the price of Alpha and Omega's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Alpha and Omega's business, operations, and prospects as alleged herein.

32.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Alpha and Omega's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

33.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

34.     During the Class Period, Plaintiff and the Class purchased Alpha and Omega's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

35.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Alpha and Omega, their control over, and/or receipt and/or modification of Alpha and Omega's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Alpha and Omega, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
### (FRAUD-ON-THE-MARKET DOCTRINE)

36.     The market for Alpha and Omega's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Alpha and Omega's securities traded at artificially inflated prices during the Class Period.  On January 15, 2020, the Company's share price closed at a Class Period high of $14.25 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Alpha and Omega's securities and market information relating to Alpha and Omega, and have been damaged thereby.

37.     During the Class Period, the artificial inflation of Alpha and Omega's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Alpha and Omega's business, prospects, and operations.

These material misstatements and/or omissions created an unrealistically positive assessment of Alpha and Omega and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

38.     At all relevant times, the market for Alpha and Omega's securities was an efficient market for the following reasons, among others:

(a)     Alpha and Omega shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Alpha and Omega filed periodic public reports with the SEC and/or the NASDAQ;

(c)     Alpha and Omega regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Alpha and Omega was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

39.     As a result of the foregoing, the market for Alpha and Omega's securities promptly digested current information regarding Alpha and Omega from all publicly available sources and reflected such information in Alpha and Omega's share price. Under these

circumstances, all purchasers of Alpha and Omega's securities during the Class Period suffered similar injury through their purchase of Alpha and Omega's securities at artificially inflated prices and a presumption of reliance applies.

40.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

41.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Alpha and Omega who knew that the statement was false when made.

**FIRST CLAIM**
**Violation of Section 10(b) of The Exchange Act and**
**Rule 10b-5 Promulgated Thereunder**
**Against All Defendants**

42.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

43.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Alpha and Omega's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

44.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Alpha and Omega's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

45.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Alpha and Omega's financial well-being and prospects, as specified herein.

46.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Alpha and Omega's value and performance and continued substantial growth, which included the making of, or the

participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Alpha and Omega and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

47.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

48.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Alpha and Omega's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless

in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

49.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Alpha and Omega's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Alpha and Omega's securities during the Class Period at artificially high prices and were damaged thereby.

50.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Alpha and Omega was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Alpha and Omega securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

51.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

52.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

### SECOND CLAIM
**Violation of Section 20(a) of The Exchange Act**
**Against the Individual Defendants**

53.     Plaintiff repeats and re-alleges each and every allegation contained above as if

fully set forth herein.

54.     Individual Defendants acted as controlling persons of Alpha and Omega within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

56.     As set forth above, Alpha and Omega and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: March 19, 2020

By:  *s/ Gregory B. Linkh*
**GLANCY PRONGAY & MURRAY LLP**
Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 530
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
Email: glinkh@glancylaw.com

-and-

Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

*Attorneys for Plaintiff Darryl Gray*

## SWORN CERTIFICATION OF PLAINTIFF

## ALPHA AND OMEGA SEMICONDUCTOR LIMITED SECURITIES LITIGATION

I, Darryl Gray, certify that:

1.      I have reviewed the Complaint and authorize its filing and/or the filing of a Lead
Plaintiff motion on my behalf.

2.      I did not purchase the Alpha and Omega Semiconductor Limited securities that
are the subject of this action at the direction of plaintiff's counsel or in order to
participate in any private action arising under this title.

3.      I am willing to serve as a representative party on behalf of a class and will testify
at deposition and trial, if necessary.

4.      My transactions in Alpha and Omega Semiconductor Limited securities during
the Class Period set forth in the Complaint are as follows:

(See attached transactions)

5.      I have not sought to serve, nor served, as a representative party on behalf of a
class under this title during the last three years, except for the following:

6.      I will not accept any payment for serving as a representative party, except to
receive my pro rata share of any recovery or as ordered or approved by the court,
including the award to a representative plaintiff of reasonable costs and expenses
(including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

3/13/2020

Date

DocuSigned by:

9909456F24704B9...

Darryl Gray

**Darryl Gray's Transactions in Alpha and Omega
Semiconductor Limited (AOSL)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 12/24/2019 | Bought | 100 | $13.7302 |